CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

**JAN 2 4 2013**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

|  |  |
|---|---|
| RONNIE T. SHELTON, | ) <br> ) <br> ) | Civil No. 5:12cv00009 |
| *Plaintiff,* | ) <br> ) | **REPORT AND** |
| v. | ) <br> ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, <br> Social Security Administration, *et al,* | ) <br> ) <br> ) | By: James G. Welsh <br> U. S. Magistrate Judge |
| *Defendants* | ) <br> ) <br> ) |  |

Alleging denials of his "civil rights under color of law," including his rights to "due process" and "under the Freedom of Information" Act, Ronnie T. Shelton claims entitlement to relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure from all adverse determinations, judgments and orders that relate to his efforts over the past twenty or more years to obtain disability benefits under the Social Security Act. (Doc # 2). In addition to reversal of a two decade-old Social Security Administration ("SSA") denial of disability benefits, this *pro se* plaintiff also seeks $1,000,000 in compensatory damages for what he describes as a "deliberate" effort to deny him is disability on the basis of a post traumatic stress disorder ("PTSD")[1] (*Id.*).

---

[1] "The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), classifies PTSD as an anxiety disorder." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 669 F.3d 1340, 1343 (Fed. Cir. 2012).

The named defendants include the Commonwealth of Virginia's Department of Disability Determination Services ("DDS"),[2] Michael Astrue (Commissioner of the Social Security),[3] Barry Lawlor (a former disability analyst for DDS), and Sharon Gottovi (Regional Director for DDS). Two SSA employees, Peggy Carter and Winnie Whiting, were also named as defendants; both have been voluntarily dismissed without prejudice by agreed order entered June 7, 2012. (Doc # 38)

Defendants, Barry Lawlor and Sharon Gottovi have moved to dismiss under Rule 12(b)(6), F.R.Civ.P, (Doc # 10); the SSA Commissioner has moved to dismiss and remand under Rule 12(b)(1), (Doc # 40), and these motions are before the undersigned magistrate judge for a report and recommendation.(Doc #6)

## I.    PRIOR LITIGATION HISTORY AND FACTS

### A. *SHELTON V. BARNHART,*
### 2006 U.S. Dist. LEXIS 30513 (WDVa. May 17, 2006)

In an earlier action instituted in this court, the plaintiff, by counsel, on November 17, 2005 filed an amended complaint in which he sought judicial review of a final decision of the Commissioner of Social Security dismissing his claim for a period of disability and disability insurance benefits (DIB") under Title II of the Social Security Act ("Act"). *Shelton v. Barnhart,* 2006 U.S. Dist. LEXIS 30513, *3 (WDVa. May 17, 2006), *aff'd per curium* 2007 U.S. App.

---

[2] This defendant has not been served with process. Disability Determination Services (DDS) is a division within the Virginia Department of Aging and Rehabilitative Services that processes disability claims for benefits under the Social Security Disability Insurance and Supplemental Security Income programs. Va. Code Ann. §§ 51.5-118 *et seq.* (1950, as amended).

[3] By agreed order entered June 7, 2012, the plaintiff stipulated that Commissioner Astrue is named as a defendant only in his official capacity. (Doc # 38)

2

LEXIS 7047 (4th Cir. Mar. 26, 2007). Therein, he asserted that he had been disabled within the meaning of the Social Security Act "since prior to December of 1989"[4] and that the Commissioner's final decision was "a violation of due process under the Fifth Amendment." *Shelton v. Barnhart* (WDVa case no. 5:05cv00060 (Doc # 5, p. 2)).

Citing *Califano v. Sanders*, 430 U.S. 99 (1977), in his response the Commissioner moved for dismissal of the plaintiff's complaint on the basis of the court's lack of subject matter jurisdiction, because the plaintiff was seeking to appeal a hearing request denial based on administrative *res judicata*. *Shelton v. Barnhart* (WDVa case no. 5:05cv00060 (doc # 11 and # 12)). In addition to his supporting memorandum of points and authorities, as the evidentiary basis for his Rule 12(b)(1) motion, the Commissioner submitted a five-page affidavit and thirteen agency exhibits outlining the administrative history of plaintiff's multiple applications since July 1990 seeking DIB and Supplemental Security Income ("SSI"). *Shelton v. Barnhart* (WDVa case no. 5:05cv00060 (doc # 12 and # 12-1, pp 1-47)).

Opposing this motion and seeking a reopening of the SSA's 1990 denial of his initial disability claim, the plaintiff advanced multiple arguments. He argued that the denial was defective on the basis of the failure of the administrative record to show either that the severity of his emotional problems had been adequately evaluated or that a consultive psychiatric evaluation had been performed; additionally, he argued that his defective mental condition operated to release him from application of administrative *res judicata*. *Shelton v. Barnhart*, 2006 U.S. Dist. LEXIS at *5-7.

---

[4] Shelton's insured status for purposes of entitlement to DIB, expired on December 31, 1989. *See Shelton v. Barnhart*, 2006 U.S. Dist. LEXIS at *2; *Shelton v. Barnhart* (WDVa5:05cv00060 (Doc # 15, p. 2)).

3

In the court's subsequent written opinion, each of the plaintiff's contentions was rejected. Therein, Judge (now Chief Judge) Conrad outlined the plaintiff's history of filing applications. *Shelton v. Barnhart*, 2006 U.S. Dist. LEXIS at *1-2. He noted that the July 1990 applications for DIB and Supplemental Security Income ("SSI") had been denied both initially and on reconsideration and that the plaintiff had not sought a *de novo* hearing before an administrative law judge ("ALJ"). He, likewise, noted that the plaintiff's later (June 2001) DIB application had been denied on initial consideration and that no further administrative review had been sought. As to the plaintiff's third DIB application (filed on February 6, 2004), Judge Conrad found that both initially and on reconsideration the "plaintiff's eligibility for entitlement had been thoroughly adjudicated by virtue of his first application." *Id.* at *2. Moreover, he concluded that the ALJ's March 25, 2005 dismissal of the plaintiff's hearing request was well-founded on the basis of the "finding that the doctrine of administrative *res judicata* barred further consideration of plaintiff's claim for a period of [DIB]." *Id.* Agreeing further with the ALJ's findings, Judge Conrad also found both the ALJ's ruling "that the issue of plaintiff's entitlement to a period of disability beginning during the time in which he still enjoyed insured status had been thoroughly and finally adjudicated in connection with his first application and denial of benefits effected on March 25, 1991" and the ALJ's ruling "that there was no 'good cause' to justify reopening the original application for benefits" were correct. *Id.* at *3.

With the Fourth Circuit's subsequent "affirm[ance] on the reasoning of the district court," the district court's findings and decision are binding on the plaintiff, and *res judicata* bars reconsideration of the issues raised by the plaintiff therein, including his challenge to the agency's 2005 dismissal order. *Fiske v. Astrue*, 476 Fed. Appx. 526, 527 (4th Cir. 2012) ("*res judicata* applies when a 'previous [disability] determination or decision has become final by

4

either administrative or judicial action'") (quoting 20 C.F.R. § 404.957(c)(1)). Moreover, to the extent any additional facts set forth in the district court's memorandum opinion are relevant to the current case, they are reiterated herein *in haec verba*.

### B. *SHELTON V. ASTRUE, et al* (WDVa, 5:12cv00009)

Appearing *pro se*, in the case now before the court, the plaintiff once again seeks entry of an order "requiring" the SSA Commissioner to set aside agency's 1991 denial of his application. In addition he seeks entry of an order awarding him DIB "during the period of 1989 to [the] present day" and $1,000,000 'for violation of his constitutional rights" and other injuries, including "pain, suffering, obstruction of justice, and for all the years of wrongful treatment."[5] (Doc # 2, p 7).

It is the plaintiff's contention that "over a number of years" he has been systematically and deliberately denied access to "his records" maintained by DDS and by SSA. (Doc #2). More specifically, he alleges he has obtained "new evidence" demonstrating that one or the other of these agencies "appear[s] to [have] altered and or (*sic*) tampered with," in order for various employees of these agencies "to deliberately deny" his post traumatic stress disorder ("PTSD") claim. (*Id.*). As part of this purported effort, the plaintiff further alleges that defendants Barry Lawlor and Sharon Gottovi (both then DDS employees)[6] specifically impeded his efforts in 2004 to obtain information relevant to his claim by falsely stating in response to his congressman's inquiry that there had been no evidence submitted to justify a reopening of his original claim.

---

[5] Because the plaintiff is proceeding *pro se*, his pleadings and arguments will be construed liberally throughout this report and recommendation. *See Erickson v. Pardus*, 551 U.S. 89, 94(2007) ("A document filed *prose* is to be liberally construed.")(citations and internal quotation marks omitted).

[6] *Shelton v. Astrue, et al*, (WDVa, 5:12cv 00009 (doc # 11, p 2)).

(Doc # 2, pp 4-6). This systematic denial of access to "his records," he alleges, effectively denied him the opportunity to demonstrate his disability, thereby "depriv[ing] him of his federal civil rights," violating his freedom of information rights, and entitling him to Rule 60 relief from any judgment or order adverse to his original disability claim. *(Id.* at pp 6-7).

Consisting almost entirely of copies of miscellaneous SSA records, the plaintiff attached eleven numbered exhibits (a total of ninety-three pages) to his complaint. (Doc # 2-1 through 2-11). These records, he alleges and argues, document the denial of his constitutional right to due process in connection with his efforts to obtain DIB and SSI benefits because his records were "altered," "tampered with," "intentionally withheld," wrongfully destroyed, and statements were made about his competency that were "not true."(Doc # 2, pp 3-7; # 16, pp 3-5; # 28 pp 1-3, 5; # 30 pp 1-3, 5; and # 46, misc. pp).

The plaintiff bases his claim of agency, and agency employee, wrongdoing on the selective use of a very limited number of SSA records attached to his complaint; however, read collectively and in their entirety, the obstructive effort alleged by the plaintiff is far less than evident.

These agency records, albeit incomplete, demonstrate that the plaintiff's original applications[7] were considered on the basis of both a physical condition and a mental health condition that had affected him since December 1966. (Doc # 2-4, pp 1-7; #2-5, p 3; # 2-7, p 5; # 2-10, pp 3-13; # 2-11, p 7). Copies of several treatment records (assumed to be Veterans

---

[7] These DIB and SSI applications were filed by the plaintiff on July 3, 1990. *Shelton v. Barnhart,* 2006 U.S. Dist. LEXIS 30513, *1 (WDVa. May 17, 2006); and *Shelton v. Astrue, et al.,* (WDVa5:12cv00009 (Doc # 2-6, p 1; # 2-8, p 9)).

Administration medical information) show that as early as June 1984 the plaintiff was receiving treatment for significant mental health issues. (Doc # 2-5, pp 6-11; *see* Doc # 2-8, p. 8). Relevant SSA documents further show that the appropriate diagnoses and related medical and mental health records were considered both initially and on reconsideration by a state agency physician and a state agency psychiatrist as an appropriate part of the agency's initial and reconsideration process. (Doc # 2-4 pp 1-2, 5-7; # 2-5 pp 3, 5, 12-16; # 2-8, pp 1, 10; # 2-11, pp 4,11).

With reference to the plaintiff's original application, these records also show that his insured status for DIB expired on December 31, 1989 (Doc # 2-4 pp 4, 10; # 2-7, p5; # 2-10, pp 5-6); they show that on March 25, 1991 his claim was denied on reconsideration (Doc #2-6, p 1; # 2-7, p 5); they show that the plaintiff was at that time represented by counsel (Doc # 2-4 pp 1-2, 4, 6-7; # 2-8, pp 1-3), and they show that no request was made either by the plaintiff or his attorney for a *de novo* review before an ALJ (Doc # 2-6, p 1).

The plaintiff's document submission next shows that it was not until July 2001, more than ten years after SSA's denial of his initial application on reconsideration, that he renewed his effort to obtain DIB. (Doc # 2-5, p1; #2-7, p 5; #2-9, p 1-3; # 2-10, pp 5-6). After determining that "nothing in [the] file warrant[ed] a reopening of the prior determination" (Doc # 2-7, p 5), the plaintiff's second "application was denied on the basis of *res judicata*" on July 10, 2001 and not pursued any further. (Doc # 2-9, p 1).

In connection with his second application, records submitted by the plaintiff show that he was continuing to allege a disability onset prior to the expiration of his insured status at the end

7

of 1989 due generally to the same physical and mental health problems, as well as several more recent medical issues, including *inter alia* a diagnosis of carpal tunnel syndrome in 1994 and an ankle injury in 1993. (Doc # 2-7, p 5).

After the passage of an additional nearly three years, the plaintiff's evidence shows that he protectively filed a third DIB claim on January 14, 2004, and in connection therewith he submitted some additional mental health information.[8] (Doc # 2-9, p 1; # 2-11, pp 5-7). After noting its review of the additional evidence submitted by the plaintiff and consistent with the previous denial of the plaintiff's 2001 DIB application, the plaintiff's third application was denied SSA on the basis of *res judicata*. (*Id.*). The plaintiff then sought a *de novo* administrative hearing, which was dismissed in March 2005 by an ALJ Order of Dismissal. (Doc #2-9, pp1-2). In doing so, the ALJ took notice of the fact that the plaintiff's insured status had expired on December 31, 1989. He then ruled that the issue of plaintiff's entitlement to a period of disability beginning during the time in which he still enjoyed insured status had been thoroughly and finally adjudicated in connection with his first application and the subsequent reconsideration denial of benefits on March 25, 1991. He found that no "good cause" had been show to justify a reopening of the original application for benefits. He addressed the plaintiff's contention that he was entitled to a reopening of the agency's March 1991 denial pursuant to 20 C.F.R. § 404.988(c)(8) on the basis of a missing decade old Form SSA-2506-BK;[9] he concluded this contention was "without merit," and he expressly found that "there [was] no requirement that every procedural or analytical document record be preserved into an indefinite future." *(Id.).* As

---

[8] Included with the documents submitted by the plaintiff as part of his complaint is a one page treatment record dated 11/08/2004 (Doc # 2-5 p 5) from Hampton VAMC, which indicates that the plaintiff was receiving ongoing mental health treatment, and its description of the plaintiff's mental health condition suggests that it may have worsened in the intervening fifteen years since expiration of his insured status on December 31, 1989.

[9] Psychiatric Review Technique form.

Case 5:12-cv-00009-MFU-JGW   Document 51   Filed 01/24/13   Page 8 of 25   Pageid#: 577

outlined in section I.A. above, the ALJ's Order of Dismissal was appealed and affirmed by both the district court, and the Court of Appeals.

Approximately one hundred pages of SSA records, plus affidavits of Lillian Gremillion (an acting branch chief in the SSA's Office of Disability Adjudication and Review) and Dawn Wiggins (an SSA Freedom of Information Officer), were also submitted for consideration as part of the Commissioner's motion to dismiss. This submission demonstrate in even more detail the regular and appropriated processing of the plaintiff's several applications in a manner consistent with SSA's administrative and freedom of information procedures. (Doc #. 42-1 through 42-27). Neither the accuracy nor the relevance of any part of this detailed evidentiary submission by the Commissioner is contested by the plaintiff. (*See* Doc # 46).

## II.     STANDARD OF REVIEW
### A. Motion to Dismiss—12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See Edwards v. City of Goldsboro*, 178 F.3[d] 231, 243 (4th Cir. 1999). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), F.R.Civ.P. A plaintiff, therefore, must "state a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556U.S. 662, 679 (2009). And the court must accept as true all well-plead facts and construe those facts in the light most favorable to the plaintiff. *Philips v. Pitt County Mem. Hosp.*, 572 F.3[d] 176, 180 (4th Cir. 2009). However, "legal conclusions, formulaic recitation of

9

the elements of a cause of action, or bare assertions devoid of further factual enhancements fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3$^d$250, 255 (4$^{th}$Cir.2009) (citing *Iqbal*, 556 U.S. at 678).

Pursuant to this standard, a plaintiff must plead enough facts to "nudge [his] claims across the line from conceivable to plausible," and if the claim is not "plausible on its face," it must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). This plausibility requirement, however, "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. *Id.* at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In the case now before the court the allegations have been made by a *pro se* complainant. Thus, they must be "liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S.89, 93(2007) (internal citation omitted). Notwithstanding this obligation, the court is not required to accept a *pro se* plaintiff's contentions as true. *Denton v. Hernandez*, 504 U.S. 25, 32(1992). And it cannot ignore a clear failure to allege facts posting a claim cognizable in a federal district court. *See Weller v. Department of Social Services*, 901 F.2$^d$ 387, 391 (4th Cir. 1990). Moreover, the court does not act as the *pro se* plaintiff's advocate, *suasponte* developing statutory claims that the plaintiff failed to clearly raise on the face of the complaint. *Id.* ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into

10

an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

### B. Motion to Dismiss—12(b)(1)

A Rule 12(b)(1) motion to dismiss tests whether subject matter jurisdiction exists, and the plaintiff has the burden of proving that such subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3$^d$ 642, 647 (4th Cir. 1999) (citing *Richmond, F. & P. R. Co. v. United States*, 945 F.2$^d$ 765, 768 (4th Cir. 1991)). When a defendant challenges subject matter jurisdiction pursuant to this Rule, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," and the district court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

### III. DISCUSSION

### A. PLAINTIFF'S MOTION PURSUANT TO RULE 60

Having styled his complaint as a "Motion for Reconsideration Pursuant to Fed.R.Civ.P.60," the plaintiff's motion is deemed, at least in part, to be a request for relief from the judgment and order of this court in the now long-closed case of *Shelton v. Barnhart*, 2006 U.S. Dist. LEXIS 30513 (WDVa. May17, 2006). Given the absence of any request under Rule 60(a) for a correction based on a clerical mistake, oversight or omission in the court's Final Order and

11

Judgment dismissing the plaintiff's complaint in that case, the plaintiff's motion in the current case is further assumed to be one filed pursuant to Rule 60(b).

"To obtain relief under Rule 60(b), the moving party must satisfy two requirements." *Holley v. Astrue*, 739 F. Supp. 2$^d$ 836, 837 (EDNC. 2010) (citing *Heyman v. M.L. Mktg. Co.*, 116 F.3$^d$ 91, 94 n.3 (4th Cir. 1997); *Nat'l Credit Union Admin.Bd. v. Gray*, 1 F.3$^d$ 262, 264 (4th Cir. 1993). It requires the moving party to make a showing of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Marks v. United States SSA*, 963 F. Supp. 517, 521 (EDVa. 1997). And after making that showing, the moving party must additionally satisfy one of the rule's "five enumerated reasons or for 'any other reason that justifies relief' from a final judgment." *See e.g. Aikens v. Ingram*, 652 F.3$^d$ 496, 500 (4th Cir. 2011); *Jones v. City of Richmond*, 106 F.R.D. 485 (EDVa. 1985); *Werner v. Carbo*, 731 F.2$^d$ 204, 206-207 (4th Cir. 1984). However, as Chief Justice Rehnquist noted in his separate opinion in *Liljeberg v. Health Servs Acquisition Corp.*, 486 U.S. 847, 874 n.11 (1988), truly "extraordinary circumstances" are required to justify a successful invocation of Rule 60(b)(6)'s "any other reason" clause. *Aikens v. Ingram*, 652 F.3$^d$496, 500-501 (4th Cir. 2011).

At the threshold, the plaintiff's motion in the instant case fails to meet the timeliness requirement. By the express terms of Rule 60(c)(1), the time for asserting a Rule 60(b) motion is limited. It "must be made within a reasonable time, and for reasons [of] (1) [mistake, inadvertence, surprise, or excusable neglect], (2) [newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)], and (3) [fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party] **no more than a year after the entry of judgment or order**

12

**or the date of the proceeding.**" (Emphasis added). *See e.g., Salazar v. District of Columbia*, 633 F.3<sup>d</sup>1110, 1116) (DC Cir. 2011) ("a party who failed to take timely action due to 'excusable neglect' [within one year] may not seek relief more than a year after the judgment" (citation omitted); *Carter v. Fenner*, 136 F.3<sup>d</sup> 1000, 1006 (5th Cir. 1998) ("Rule 60(b)(1) motions must be brought within one year").

Ignoring *arguendo* this one-year timeliness requirement, the plaintiff's motion nevertheless fails to demonstrate entitlement under any of the potentially relevant grounds for relief enumerated under Rule 60(b).

To succeed under the rule's first enumerated basis ("mistake, inadvertence, surprise, or excusable neglect") the plaintiff bears the burden of demonstrating exceptional grounds that are "clearly substantiated by adequate proof." *In re Burnley*, 988 F.2<sup>d</sup>1, 3 (4<sup>th</sup>Cir. 1992). That "determination is at bottom an equitable one." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395(1993).

No such equitable grounds have been demonstrated by the plaintiff, and the passage of ten years between the agency's denial of the plaintiff's original application in March 1991 and his filing of a second application strongly evidences the plaintiff's failure to act with diligence. There is no claim by the plaintiff of attorney deficiencies or erroneous legal advice sufficient to suggest some cognizable "mistake" or "excusable neglect" under Rule 60(b)(1). *See Augusta Fiberglass Coatings v. Fodor Contracting*, 843 F.2<sup>d</sup>808, 811 (4<sup>th</sup>Cir. 1988). He has provided no evidence to suggest that the reason for this extraordinarily long delay was not within his reasonable control. Thus, having failed to offer any compelling reason for this decade-long

13

delay in the pursuit of his disability claim, his failure to act "with diligence [prevents any ability on his part] to establish that his conduct constituted excusable neglect." *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 132 (4th Cir. 1992); *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 413 (4th Cir. 2010). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 395. Moreover, his decade-long failure to act not only evidences inexcusable neglect on the plaintiff's part, but it strongly indicates an ongoing absence of good faith. *See Pioneer Inv. Servs. Co.,* 507 U.S. at 395.


To succeed on Rule 60(b)'s second (newly discovered evidence) or third (fraud, misrepresentation, or misconduct) enumerated grounds, the plaintiff must demonstrate: (1) that he exercised due diligence in obtaining the information and (2) that the evidence is material, controlling and clearly would have produced a different result if presented before the original judgment. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003). Assuming, for purposes of discussion herein, that the plaintiff is correct in his claim that his "new" evidence demonstrates that the SSA erroneously failed to consider his disability claims on the basis of a PTSD diagnosis, the plaintiff has nevertheless failed to demonstrate either a valid Rule 60(b)(2) or Rule 60(b)(3) claim. Whether the agency described his mental health issues generally as "bad nerves" (Doc # 2-4, p 5) or "adjustment disorder" (Doc # 2-4 p 1), nothing alleged by the plaintiff in his complaint or demonstrated in his attachments concerning the diagnostic description of his mental health condition would in any cognizable way overcomes the now long-final reconsideration determination dated March 25, 1991. *See generally CVLR Performance Horses, Inc. v. Wynne*, 2012 U.S. Dist. LEXIS 71355, *12 (WDVa. May 23, 2012) ("When making a motion under Rule 60(b), the party moving for relief must clearly establish the grounds therefor [sic] to the satisfaction of the district court . . . and such grounds must be clearly

14

substantiated by adequate proof.") (quoting *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) (citations and internal quotation marks omitted)).

Furthermore, any claim by the plaintiff of entitlement to relief under Rule 60(b)(2) on the basis of newly discovered evidence or under Rule 60(b)(3) on the basis of fraud, mistake or misconduct is factually inconsistent with, and contradicted by, the plaintiff's own treatment records dated a mere seven months after the expiration of his insured status, which describe his condition at that time as an "adjustment disorder with mixed emotional features" and in which the treating physician also records his "impression" that PTSD and major depression were possible additional diagnoses to be "ruled out" in the future. (Doc # 2-5, p 7).

Although Rule 60(b)(6) enables relief from a prior order for "any other reason that justifies relief" and has been described as a *catch-all* provision, a movant's reliance on this sub-section is appropriate only under "extraordinary circumstances," that is: under circumstances "creat[ing] a substantial danger that the underlying judgment was unjust." *Murchison v. Astrue*, 466 Fed. Appx. 225, *10 (4th Cir. 2012) (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986) (*per curium*). The plaintiff's claim in the instant case fails completely to demonstrate any such extraordinary circumstances. In fact, the circumstances demonstrated by the record strongly indicate that the plaintiff's claims were considered appropriately and that no underlying judgment was unjust. Moreover, a fair reading of the record demonstrates that the plaintiff's complaint is nothing more than a request for reconsideration, that is: an effort on his part to get the court to change its mind. *See Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001).

## B. RULE 12(B)(6) MOTION OF LAWLOR AND GOTTOVI

In his complaint the plaintiff alleges that his constitutional[10] and freedom of information rights to substantive and procedural due process were violated by Defendants Lawlor and Gottovi (both then DDS employees) as a result of their "consistent[] interfere[ing] with" his efforts to obtain "evidence contained in his [SSA] records." (Doc # 2, ¶¶ 1-3, 5-6). In response, these defendants have moved, jointly and severally, for dismissal of the plaintiff's claim against them in its entirety, pursuant to Rule 12(b)(6) on the basis of the plaintiff's failure to state a cognizable claim against either of them and alternatively that his claim, if any, is time-barred. (Doc # 11). Additionally, they assert entitlement to Eleventh Amendment protection as state officials from claims for money damages. (*Id.*).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, in order for the plaintiff to prevail on either his procedural or substantive due process claims, he must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *See Watkins v. Wilson*, 2012 U.S. Dist. LEXIS 183740, *5 (EDVa. Dec, 28, 2012). To claim a denial of procedural due process, the plaintiff must demonstrate that he was subjected to unfair procedures.[11] *Goss v. Lopez*, 419 U.S. 565, 579 (1975). On the

---

[10] The plaintiff's claim of a violation of his "due process rights" is deemed to assert a constitutional claim under section 1 of the Fourteenth Amendment.

[11] "Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (internal citation omitted).

substantive due process side,[12] the plaintiff must demonstrate governmental action that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937). On review, neither the plaintiff's procedural nor his substantive due process claims can survive the Rule 12(b)(6) motions of Defendants Lawlor and Gottovi.

### 1. No Procedural Due Process Denial by DDS Defendants

Neither the plaintiff's complaint nor any of its attachments allege any facts reasonably suggesting any action or inaction by Defendants Lawlor or Gottovi that deprived the plaintiff of any cognizable right to notice or to be heard.[13] Furthermore, the plaintiff's complaint and attachments contain no suggestion that the plaintiff made any FOIA[14] inquiry to either of these defendants or that any other plausible procedural due process claim is set forth against either of them.

### 2. No Substantive Due Process Denial by DDS Defendants

To the extent the plaintiff claims that these defendants deprived him of his substantive due process rights, he has also failed to state a claim. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *County of Sacramento v. Lewis*, 523 U.S. 833, 847

---

[12] Substantive due process prevents "state action that is so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation . . . remedies." *Mora v. City of Gaithersburg*, 519 F.3rd at 230 (citation omitted).

[13] The plaintiff's documentary submission contains one letter from Sharon Gottovi in her official capacity responding to an inquiry by Congressman Goodlatte's office (Doc #2-7, p 2) and one letter from Barry Lawlor in his official capacity addressed to the plaintiff acknowledging receipt of his disability application (Doc #2-11, p 11).

[14] Freedom of Information Act ("FOIA"), 5 U.S.C. § 522

17

(1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted). No such deprivation is alleged against these defendants.[15] Read liberally, the only liberty or property interest deprivation alleged in the complaint is the plaintiff's interest arising under FOIA (Doc # 2, p 7). Such a deprivation, even if *arguendo* a cognizable responsibility of one or the other of these DDS employees, simply does not rise to a conscience-shocking level.

As the Fourth Circuit has advised in similar situations, "[t]he protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Sylvia Dev. Corp v. Calvert County*, 48 F.3$^d$ 810, 827(4th Cir. 1995) (quoting *Rucker v. Harford County*,946 F.2$^d$278, 281 (4$^{th}$Cir. 1991)).

### 3. § 1983 Claim Against DDS Defendants Is Time-Barred

Although the plaintiff asserts that his claim is based on the defendants' violation of 18 U.S.C. § 242, [16] an individual "cannot sue to enforce his rights" under this criminal statute. *Yu' SunrusBey v. North Carolina*, 2012 U.S. Dist. LEXIS 114284, *3 (WDNC. Aug. 14, 2012). Only the government has the ability to imprison people and enforce this statute. *Id.* Consequently, a reading of the plaintiff's complaint liberally requires it to be construed as a claim pursuant to 42 U.S.C. § 1983 to enforce his constitutional rights. *Id.*

---

[15] *See* footnote 13.

[16] This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the United States.

18

Accordingly, Virginia's two-year statute of limitation is applicable to the plaintiff's claims against the DDS defendants. *Wallace v. Kato*, 549 U.S. 387 (2007); *Lewis v. Richmond City Police Dept.* 947 F.2$^d$ 733, 735 (4th Cir. 1991). And since neither the plaintiff's complaint nor his associated documents (Doc # 2-7, p 2; # 2-11, p 11) suggests any involvement by either of them in any matters he alleges after 2004, the claim against both Lawlor and Gottovi is time-barred.

### 4. DDS Defendants Entitled to 11th Amendment Immunity

Absent any cognizable suggestion in the plaintiff's complaint or its attachments that any allegedly wrongful act of the DDS defendants, either or both, was taken other than in their respective capacities as state officials,[17] any claim by the plaintiff for money damages must be dismissed because a state official acting in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Will v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

### C.   Rule 12(b)(1) Motion of SSA Commissioner

On the basis of what the plaintiff contends was the SSA's utilization of "altered or fabricated" documents and it refusal to provide him with copies of "his records," the plaintiff alleges the denial of his due process and "[f]reedom of [i]nformation rights. These activities, the plaintiff contends, have resulted in the agency's "deliberate[]" denial of his twenty-year effort to obtain a DIB award on the basis of his PTSD. (Doc # 2, pp 3-5). Additionally, the plaintiff

---

[17] It is well-settled that in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2 926, 928 (4th Cir. 1977). In the instant, case the plaintiff makes no such allegation regarding either defendant DDS employee.

alleges that SSA violated its preservation-of-records obligation under 44 U.S.C. § 3309, when in 1996 its records pertaining to his original 1990 SSI application were destroyed. (*Id.*, p 6; *see* #2-11, p 1).

Pleading a lack of subject matter jurisdiction, the Commissioner of Social Security has moved for dismissal of the plaintiff's complaint pursuant to Rule 12(b)(1), and he has submitted the affidavit of Lillian Gremillion (Doc # 42-1), along with twenty-five supporting exhibits (Doc # 42-2 through 42-26) that outline in exquisite detail the SSA's procedures and the decisional process employed in connection with the plaintiff's several DIB applications. Also attached to the Commissioner's motion is the affidavit of Dawn Wiggins (Doc # 42-27) attesting to the absence of any effort by the plaintiff to exhaust his administrative appeal rights under either FOIA or the Privacy Act.

### 1. No Cognizable Claim for Money Damages Against SSA

As the Supreme Court observed in *Heckler v. Day*, 467 U.S. 104, 106 (1984), millions of claims for disability benefits are filed each year, and these claims are handled "under an unusually protective [multi]-step process for the review and adjudication of disputed claims;" however, the Social Security Act "makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits." *Schweiker v. Chilicky*, 487 U.S. 412, 424-425 (1988). Therefore, even if it is assumed *arguendo* that the plaintiff's claim for disability benefits was improperly denied and that any such denial resulted in due process violations by government officials administering the Social Security disability benefits program, it does not give rise to an action for money damages. *Id.* at 414 ("This case requires us to decide whether the improper denial of Social Security disability

benefits, allegedly resulting from violations of due process by government officials who administered the federal Social Security program, may give rise to a cause of action for money damages against those officials. **We conclude that such a remedy, not having been included in the elaborate remedial scheme devised by Congress, is unavailable.**") (Emphasis added).

## 2. Administrative Remedies Under FOIA and Privacy Act Not Exhausted

As the Commissioner properly points-out in his memorandum, the plaintiff's request for his records was properly treated by the SSA as a request brought under the Federal Privacy Act (5 U.S.C. § 552a) not under FOIA (5 U.S.C, § 552). (Doc # 42, p 9). And as the Commissioner also points-out, the plaintiff has both failed to appeal the agency response and deliberately elected instead to file a "new [f]reedom of [i]nformation request" by letter dated January 5, 2011 addressed to SSA's Office of Disability Adjudication and Review. (Doc # 42, pp 9-10 and ex. 27, p 2; # 2-3, p1). Given this deliberate and undisputed failure to exhaust his administrative remedy, his request for court review of the SSA's response should be dismissed. *Pollack v. Dep't of Justice*, 49 F.3[d]115, 118 (4th Cir. 1995) ("a requester may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies") (citing *Spannaus v. Dep't of Justice*, 824 F.2[d] 52, 58 (DC Cir. 1987)).

## 3. SSA Did Not Violate 44 U.S.C. § 3309

In his complaint the plaintiff also alleges that the SSA violated 44 U.S.C. § 3309 by failing to preserve the SSI file pertaining to his 1990 application. (Doc # 2, p 6; # 2-11, p 1). This claim is totally without merit. This record was destroyed in 1996 (Doc # 2-11, p 1), five years after his SSI claim had been denied by an adjudication that had been final five years. Moreover, another five years would pass before the plaintiff again raised the issue of his

21

disability prior to the expiration of his insured status. Thus, at the time this record was destroyed there was no claim or demand pending against the SSA by the plaintiff, and the record could be properly "disposed of by the head of [the SSA] authorization granted under [44 USCS §§ 3301 *et seq.*]." 44 U.S.C. § 3309.


## IV. RECOMMENDED FINDINGS & CONCLUSIONS


As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

(1)  The plaintiff's Rule 60(b) motion fails to meet the timeliness requirement of Rule 60(c)(1);

(2)  The plaintiff has failed to demonstrate an entitlement to relief under any of the grounds set forth in Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect;"

(3)  The plaintiff has failed to demonstrate an entitlement to relief under any of the grounds set forth in Rule 60(b)(2) for "newly discovered evidence . . ;"

(4)  The plaintiff has failed to demonstrate an entitlement to relief under any of the grounds set forth in Rule 60(b)(3) for "fraud, misrepresentation, or other misconduct that "prevented him from fully and fairly presenting his claim;"

(5)  The plaintiff has failed to present any other "extraordinary circumstances" that would warrant relief under Rule 60(b)(6);

(6)  The plaintiff's complaint fails to allege facts or circumstances sufficient to state a cognizable cause of action for denial of his substantive or procedural right of due process;

(7)  The plaintiff's complaint fails to allege facts or circumstances sufficient to state a claim for any other constitutional harm;

22

(8)     The plaintiff's claim, although pleaded under 18 U.S.C. § 242, should be construed to be a claim asserted pursuant to 42 U.S.C. § 1983;

(9)     The plaintiff's complaint and associated submission fails to make any affirmatively showing that any named defendant acted personally in the deprivation of the plaintiff's rights;

(10)    Any claim for money damages asserted against Defendants Lawlor and Gottovi is a claim against a state official acting in his or her official capacity and is not a suit against the official but rather is a suit against the official's office;

(11)    Defendants Lawlor and Gottovi are entitled to dismissal of the plaintiff's Section 1983 claim both under the Eleventh Amendment and because in their official capacities neither of them is a "person" subject to suit for money damages under the statute;

(12)    Although Eleventh Amendment immunity does not bar a suit against a state official when a plaintiff is seeking prospective relief to end a continuing violation, that exception does not apply in this case;

(13)    The plaintiff's claim against Defendants Lawlor and Gottovi is time-barred;

(14)    The Social Security Act contains no provision authorizing money damages against SSA officials responsible for any constitutional harm;

(15)    The plaintiff has failed to exhaust the administrative remedies available to him under 5 U.S.C. § 552a and 5 U.S.C. § 552, either or both, and his request for court review of the SSA's response to his 'freedom of information" request should be dismissed;

(16)    The material jurisdictional facts relevant to the Commissioner's motion to dismiss are not in dispute;

(17)    The plaintiff  has failed to demonstrate good cause for the reopening of any administrative non-disability determination, judgment or order by SSA;

(18)    The court lacks subject matter jurisdiction to consider the plaintiff's motion to "reverse, set aside, and award" him DIB benefits; the Commissioner's motion to dismiss on the basis of a lack of subject matter jurisdiction is well-taken , and the Commissioner is entitled to prevail as a matter of law;

(19)    The plaintiff's complaint and associated submissions fail to demonstrate subject matter jurisdiction;

23

(20) On the basis of *res judicata*, the court lacks subject matter jurisdiction in this case to the extent the plaintiff is seeking to have the court reopen or reconsider its dismissal of his complaint in *Shelton v. Barnhart*, 2006 U.S. Dist. LEXIS 30513 (WDVa. May 17, 2006);

(21) The plaintiff's complaint (including all attachments and submissions) on its face fails to state a plausible cause of action against the defendants, either jointly or severally;

(22) The plaintiff has failed to state a plausible claim for relief, and the underlying facts and circumstances relied-upon by the plaintiff are not a proper subject of relief; and

(23) The "futility of amendment" justifies the denial of any leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## V.    RECOMMENDED DISPOSITION

It is recommended that the Plaintiff's Rule 60(b) motion for relief be DENIED, that the Rule 12(b)(6) motion of Defendants Lawlor and Gottovi be GRANTED, that they be DISMISSED as parties, that the Rule 12(b)(1) motion of the Commissioner of Social Security be GRANTED, that he be DISMISSED as a party, and that this cause use of action be DISMISSED and STRICEN from the active docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to the plaintiff and to all counsel of record.

## VI.    NOTICE TO THE PARTIES

All parties are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and

24

Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 24th day of January 2013.

s/ James G. Welsh
United States Magistrate Judge